OPINION
Appellant Edward W. Dickey appeals his conviction for robbery in the Court of Common Pleas, Stark County. The Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
On May 30, 2000, appellant visited the J.C. Penney store in Canton Centre Mall. Proceeding to the clothing department, appellant selected four "FUBU" brand jerseys and two pairs of shorts. He then took the items into a fitting room. After about five minutes, appellant emerged carrying only two items, rather than six. Appellant hung the two items back on the rack and proceeded to exit the store.
Loss prevention security officer Joshua Staub followed appellant as he proceeded into the parking lot. Staub made a radio call for assistance, and was quickly joined by another store security officer, Jeremy Lowery and a supervisor, Jeff Collier. The three officers advanced toward appellant, who had made his way to a gold-colored automobile. When the officers approached, appellant was sitting in the back passenger seat. Appellant was asked to step out of the vehicle, which he did after initially refusing. At that point, one of the security officers attempted to grab appellant's wrist; however, appellant pulled away and began running toward a grocery store across the street from the mall. Lowery was the first officer to catch up with appellant, but appellant suddenly stopped and punched him in the face. Staub maintained the pursuit and was nearly punched as well. Collier, maintaining radio contact, finally called the chase off.
Staub and Collier continued to watch appellant as he fled behind a residential garage near the grocery store. When he appeared a short time later, he "no longer had the bulge around his midsection," in the words of Staub. The two officers looked behind the garage and found three FUBU jerseys and a pair of shorts in some bushes. These items were identical to those Staub observed appellant take into the dressing room. Staub and Collier later selected appellant from a photograph array.
Appellant was arrested two days later. On June 30, 2000, appellant was indicted for robbery, a second-degree felony. On August 24, 2000, a jury found appellant guilty as charged. Following the verdict, appellant was sentenced to seven years in prison. Appellant timely appealed and herein raises the following three Assignments of Error:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY DENYING THE DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A) AT THE CLOSE OF THE STATE'S EVIDENCE AND AT THE CLOSE OF ALL THE EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR ROBBERY.
 II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION AND THEREFORE, THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY FAILING TO ADEQUATELY RESPOND TO A QUESTION SUBMITTED TO THE COURT BY THE JURY AFTER THEY HAD RETIRED TO DELIBERATE.
 I
In his First Assignment of Error, appellant argues that the trial court erred in denying his two motions for acquittal. We disagree. Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses * * *." In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 273.
The statute in question, R.C. 2911.02(A), states that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control;
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (3) Use or threaten the immediate use of force against another."
Appellant admitted to physically assaulting security officer Lowery. Thus, the "physical harm" element of R.C. 2911.02(A)(2) is established, leaving the issue of whether sufficient evidence supports the finding of a theft offense against appellant. The definition of "theft offense" includes knowingly obtaining or exerting control over property without the consent of the owner. R.C. 2913.01, R.C. 2913.02(A). In the state's case-in-chief, after eliciting Lowery's testimony regarding the chase and assault, the prosecutor called security officer Staub. He identified appellant as the person he observed come into the store, "go straight for [the] FUBU line," and remove six items. Tr. at 144. Staub further recollected observing appellant go into a fitting room and step out about five minutes later, carrying just one pair of shorts and one jersey. Tr. at 144-147. Staub, who was working undercover, had a vantage point "right outside the [changing room] door * * *." He recalled appellant's appearance upon exiting the changing room: "He looked like he had gained 50 pounds, had a bulge like a pregnant woman would have, just in one spot." Tr. at 146. Appellant then placed just the two carried items on a rack and quickly walked out of the store. Staub maintained visual contact with appellant as he proceeded to a gold car in the lot. He then called on his radio for assistance, after which Lowery and supervisor Collier joined him. Staub noted that the appellant's "bulge" was still noticeable when the officers approached the gold car. Tr. at 151. After Collier called off the foot chase, he caught up with Staub and the injured Lowery in the grocery store lot. Staub recalled that as he and Collier watched appellant depart from the residential area behind the grocery store, appellant no longer showed a bulge around his midsection. Tr. at 162. Staub soon thereafter found four FUBU clothing items behind a garage, all with J.C. Penney tags still attached. He was certain that these items were the four appellant took from the store. Tr. at 165-166.
Upon review of the record and the explicit testimony of Lowery, Staub, and Collier in a light most favorable to the prosecution, we find that reasonable jurors could find the elements of robbery beyond a reasonable doubt. The court did not err in denying appellant's motions to acquit. Appellant's First Assignment of Error is overruled.
 II
In his Second Assignment of Error, appellant argues that the conviction is against the manifest weight of the evidence. We disagree. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine, "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant took the stand in his defense. He admitted on direct examination to "a rather extensive criminal history," including having been in prison six times and in county jail on numerous occasions. Tr. at 280. However, he asserted that he had received a $7,000 inheritance just eight days before the incident in question and planned to buy some clothing for his birthday. He claimed he took just four items into the changing room, and that he put them all back on the rack. He stated that he then went out to the car to smoke some marihuana and to wait for the two women with whom he had been shopping.[1] Fearing that any responding police officers might find the marihuana, he claimed to run away to avoid a potential parole violation, but denied having any items from the store, since "money was not a problem" at that time. Tr. at 296. He also protested that he would not steal and thereby risk returning to prison, although, as the state brought out during cross-examination, he nonetheless admittedly risked a parole violation with his rather open use of marihuana in the J.C. Penney parking lot. Tr. at 317.
Our review of the record reveals no merit in appellant's contention that the jury's verdict led to a manifest miscarriage of justice. As we have often reiterated, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v.DeHass (1967), 10 Ohio St.2d 230 . The implicit credibility conclusions of the jurors are not a sufficient basis for now claiming they effectively lost their way under the circumstances of this case. The jury's verdict was not against the manifest weight of the evidence. Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant urges that the trial court erred in attempting to answer a juror's question submitted during deliberation. We disagree.
Juror Taylor submitted the following question in writing to the court: "Do we use the defendant's actions as evidence from the time he enters the courtroom or only while he's in the witness stand?" Tr. at 409. The trial court replied as follows: "The jury may consider the defendant's demeanor while in the courtroom." Tr. at 410. Defense counsel entered an objection, arguing that the aforesaid answer contradicted the jury's previous instructions and Ohio law.
In State v. Carter (1995), 72 Ohio St.3d 545, paragraph one of the syllabus, the Ohio Supreme Court held: "Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." In the case sub judice, the court relied on State v. Taniguchi(1994), 96 Ohio App.3d 592, 596, for the proposition that a defendant's face and body are physical evidence and commentary may be made on a defendant's demeanor in the courtroom. The court justified the applicability of the Taniguchi rationale by noting "* * * that throughout the entire proceedings * * * the defendant was either waving to the jurors or making some type of physical actions towards the jurors * * *." Tr. at 412.
Upon review of the record, we are unpersuaded that the trial court abused its discretion in responding to the juror's request for further instructions. Appellant's Third Assignment of Error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to appellant.
Hon. Julie A. Edwards, P. J. Hon. John W. Wise, J. Hon. John F. Boggins, J. concur.
[1] Neither of these two individuals testified at trial.